**MORRISON et al. v. LAMBERT.**

**No. 12375.**

Court of Civil Appeals of Texas. Fort Worth.
Nov. 8, 1930.

Rehearing Denied Dec. 20, 1930.

R. S. Morrison and W. E. Forgy, both of Archer City, and W. L. Scott, of Graham, for appellants.

Kilgore & Rogers, of Wichita Falls, for appellee.

BUCK, J.

T. R. Lambert, owning a leasehold interest in some lands in Archer county, contracted with R. Q. Jones to drill a well on the land, and agreed to transfer and assign to said Jones, in payment of the drilling, an undivided one-half interest in and to the north 80 acres out of a 171-acre tract, the lease to which had been acquired by T. R. Lambert. Mr. Jones, being unable to drill the well himself, employed W. H. Morrison to drill the well for him, agreeing to pay him $2 per foot. The well was to be drilled for oil and gas and, ac-

cording to the agreement between Jones and Lambert, was to be drilled to a depth of 950 feet unless oil or gas in paying quantities should be found at a less depth. Jones was to pay all costs and expenses of drilling, and to do the drilling in a workmanlike manner.

W. H. Morrison filed this suit against T. R. Lambert, alleged to reside in Wichita county, and R. Q. Jones, alleged to reside in Young county, alleging that in contracting with him (the plaintiff) Jones acted for himself and for T. R. Lambert. That the contract between plaintiff and Jones was verbal, and that Jones agreed to pay him $2 per foot for the drilling and that he drilled the well 926 feet, where oil was found. It was agreed in the contract that by the terms "in paying quantities" was meant that the well should produce for "flush production" not less than ten barrels per day. Plaintiff alleged that the well he drilled did produce more than ten barrels per day.

It appears that the plaintiff and the defendant Jones both admitted in their pleadings that the written contract between Lambert and Jones did not correctly describe the land on which Lambert held a lease, and the court seems to have tried the case on the assumption that the contract did not, by reason of the mutual mistake of Lambert and Jones, or by the mistake of the scrivener, reflect the contract as verbally made theretofore.

Upon a trial before a jury, and upon the completion of the testimony, the court instructed a verdict for the plaintiff as against the defendant Jones, and further instructed the jury to find for the defendant Lambert as to the cause asserted by plaintiff, and also as to the cross-action of the defendant Jones, and further find for the defendant Lambert on his cross-action against the plaintiff and the defendant Jones. From a judgment entered on the verdict returned by the jury in response to the court's peremptory instruction, both Morrison and Jones have appealed.

### Opinion.

We have concluded that the written contract between Lambert and Jones is sufficient to enable the surveyor to go out on the ground and to determine the boundaries of Lambert's land or lease. The contract reads as follows:

"This agreement, this day made and entered into by and between T. R. Lambert and R. Q. Jones, witnesseth:

"That the said T. R. Lambert is the owner of an oil and gas lease, covering the east 171 acres of T. E. & L. Company survey 1825, in Archer County, Texas. That the said T. R. Lambert desires a well drilled for oil and gas on the north 80 acres of said 171 acre tract, and the said R. Q. Jones agrees to drill such well upon the following conditions:

"The said T. R. Lambert agrees to execute an assignment to an undivided one-half interest in the north 80 acres of said 171 acre tract to the said R. Q. Jones, and place the same in escrow with Kay & Akin, to be delivered to the said R. Q. Jones, upon the completion of the well upon said land, and conditioned that said well produces oil in paying quantities, and by paying quantities is meant a well that will produce no less than ten barrels of oil per day, flush production, said assignment to include an undivided one-half interest in said lease and all equipment now located therein. Should the well heretofore mentioned not come in a producer, as above defined, then the assignment above mentioned is to be null and void, but should it come in as such producer, then said assignment shall be delivered to the said R. Q. Jones, and be in full force and effect.

"The said R. Q. Jones agrees to drill in a workmanlike manner a well for oil and gas on said 80 acres at a point agreed upon, same being an offset to the small producing well now on said land, and to drill the same to a depth of 950 feet, unless oil or gas in paying quantities is found at a lesser depth, and said Jones is to drill said well at his own cost and expense, and is to set the necessary casing, in the event a paying sand is found, and to connect said well with the power plant now on said land, all at his own cost and expense. After such well is so connected to the power plant, all further expense in connection with said lease shall be borne equally, one-half by T. R. Lambert and one-half by said R. Q. Jones. Should further drilling be done, same shall be by mutual consent, and both parties hereto shall share equally in the expense, as well as the profits.

"The said R. Q. Jones agrees to begin the drilling of such well on or before the 1st day of January, 1929, and when drilling is so begun, is to continue the same with due diligence until completed. The said R. Q. Jones may have fifteen days from and after this date in which to have examined the title to said 80 acres of land, and to report in writing any valid defects found therein, and if such defects be found in said title, the said T. R. Lambert shall have ten days in which to correct the same. Any defects not so reported in writing shall be considered waived by the said R. Q. Jones. Should it be found that the said T. R. Lambert has not good and sufficient title to the leasehold of said land, then and in that event, this agreement to be null and void, but should the said T. R. Lambert have a good and sufficient title, then this contract shall in all things be binding.

"The said R. Q. Jones, in case the said well is a producer, as above defined, is to have the operation of the lease on said 80 acres of land, it being understood, however, that there will be no overhead expense, each of the parties to bear one-half of the actual expense of operating the lease, and the said R. Q. Jones shall bill the said T. R. Lambert, for one-half of

such expenses, on the first day of each month, and said T. R. Lambert agrees to pay his one-half of such expense on or before the 15th day of each month.

"This agreement shall be binding upon the parties hereto, and their heirs and assigns, and legal representatives.

"Witness our hands this the 1st day of December, A. D. 1928.

"T. R. Lambert
"R. Q. Jones.

"In event well mentioned in above agreement is a producer, the said R. Q. Jones agrees to clean out the well now on said lease; expense of which to be borne equally by parties hereto.

"T. R. Lambert."

A surveyor could go to the records and get the field notes of the T. E. & L. Company survey 1825, and from those field notes he could determine the east 171 acres and also the north 80 acres of said 171-acre tract. With this information, he could then determine the 80-acre tract, one-half of which Lambert agreed to convey to Jones upon the completion and fulfillment of the drilling contract. There appears in the testimony some evidence that the well drilled by Morrison at the instance of Jones for Lambert did produce a flush production of more than ten barrels. Mr. Jones testified:

"We pumped about 12 barrels the first day it was pumped; Mr. Lambert was there the first day, he was there part of the time, we started pumping about two o'clock and he stayed until about four and measured the tank before he left, and there was seven inches in the tank at the time he left, which would be seven barrels. His pumper was there at the time. I don't know whether Lambert gave his pumper any instruction as to what to do while he was gone, but the pumper was there all the time and saw the well pumping. We were supposed to have a 24 hour test but we only pumped it by spells, we didn't pump it regularly, we would pump it a while and rest it a while, and during this 24 hours it made that much oil and more; after we shut the rig down, after the test was up, it flowed into the tank after we quit pumping it, after the 24 hours was up."

■ In view of this testimony and other testimony to the same effect, we think the peremptory instruction to find for Lambert and against Jones was error, and for that error the judgment below must be reversed and the cause remanded. We do not disturb the judgment rendered for Morrison as against Jones.

The contract between Morrison and Jones was a contract with designated services to be rendered by Morrison and the services were rendered, and Jones owes Morrison the amount he agreed to pay, to wit, $1,992. Morrison claimed some additional compensation due him for extra services, which the court allowed, making the amount due him $1,992 instead of $1,852.

■ In the contract between Jones and Lambert and after the signatures of the parties, there was this writing signed alone by T. R. Lambert:

"In event well mentioned in above agreement is a producer, the said R. Q. Jones agrees to clean out the well now on said lease; expense of which to be borne equally by parties hereto."

There is some evidence that the well already on the land was not cleaned out by Jones or by Morrison. This failure does not preclude Jones from recovering the one-half interest in the land, but merely, if the agreement is sustained as a part of the contract, entitles Lambert to recover one-half of the amount found to be necessary to clean out the well then on the land.

The judgment between Jones and Lambert is reversed, and the cause is remanded. The judgment in favor of Morrison as against Jones is left undisturbed.